UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X
In re HOLOCAUST VICTIM ASSETS LITIGATION

Docket No. 04-cv-3766 (ERK) (JO)

In re Accounts of
Anna Marcus and Susanne Marcus
(Claim No. 202033/MD)
--------------------------------------------------------------------X


**MEMORANDUM OF LAW IN OPPOSITION TO CLAIMANT OLGA DUFOUR'S POSITION ON THE COURT'S APRIL 16, 2010 MEMORANDUM & ORDER APPROVING SET 195: SIX AWARDS, 18 AWARD AMENDMENTS, NINE ADMINISTRATIVE REVISIONS OF AWARDS AND AWARD AMENDMENTS, AND 13 LETTERS CLOSING CLAIMS CERTIFIED BY THE CLAIMS RESOLUTION TRIBUNAL PURSUANT TO ARTICLE 31(2) OF THE RULES GOVERNING THE CLAIMS RESOLUTION PROCESS AND AUTHORIZING PAYMENT FROM THE SETTLEMENT FUND IN CASE NO. 96-CV-4849 (ERK) (JO)**


Respectfully Submitted by:

Markowitz & Rabbach LLP
Attorneys for Claimants
Lawrence Haaker, David Haaker,
Lisa Haaker and Suzanne Haaker
290 Broadhollow Road, Suite 301
Melville, New York 11747
(631) 427-7888

## TABLE OF CONTENTS

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    I.    The Original CRT Award . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    II.    The 2005 Settlement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    III.    The Award Amendment and 2010 Order . . . . . . . . . . . . . . . . . . . . . . 9

    IV.    Correspondence Regarding The Award Amendment . . . . . . . . . . . . . . . 9

    V.    The GSF Award To Claimant Dufour . . . . . . . . . . . . . . . . . . . . . . . . . 10

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

    I.    CLAIMANT DUFOUR'S ARGUMENT THAT THE 2010 ORDER'S
          REFERENCE TO PROPORTIONAL PAYMENT CONSTITUTES A
          MISTAKE SHOULD BE DISMISSED AS TIME-BARRED
          PURSUANT TO FRCP RULE 60(b)(1). . . . . . . . . . . . . . . . . . . . . . . . . 11

    II.    PURSUANT TO THE PLAIN LANGUAGE OF THE AWARD
          AMENDMENT AND 2010 ORDER, THE AWARD AMENDMENT
          SHOULD BE DISTRIBUTED IN THE SAME PROPORTION AS
          THE 2005 SETTLEMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

          A.    The Award Amendment And 2010 Order Are
                 Clear And Unambiguous, And Should Be Enforced
                 According To Their Terms. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

          B.    The Only Fair Reading Of The 2005 Settlement Is
                 That It Was Intended To Be Proportional In Nature.
                 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

i

III.  CLAIMANT DUFOUR'S RELIANCE ON MS. FURMANSKY'S WILL IS MISPLACED, AS THE ORIGINAL AWARD WAS NOT BASED ON THE WILL AND THE HAAKER CLAIMANTS CONSENTED TO ITS PROBATE SOLELY AS A CONDITION OF THE 2005 SETTLEMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  16

CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  19

# TABLE OF AUTHORITIES

## Rules

Fed. R. Civ. P. 60(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Fed. R. Civ. P. 60(b)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Fed. R. Civ. P. 60(c)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

## Cases

Marcus v. Dufour, 796 F. Supp. 2d 386 (E.D.N.Y. 2011)  . . . . . . . . . . . . . . . . . . . . . 10-11

McKeown v. N.Y., 444 Fed. Appx. 508, 2012 WL 5835
    (2d Cir. Jan. 3, 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Medinol Ltd. v. Guidant Corp., 500 F. Supp. 2d 345
    (S.D.N.Y. 2007)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Warren v. Garvin, 219 F.3d 111 (2d Cir. 2000)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Wilson v. City of N.Y., 2009 WL 3614612
    (S.D.N.Y. Nov. 2, 2009)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

iii

## PRELIMINARY STATEMENT

This Memorandum of Law is respectfully submitted on behalf of Claimants Lawrence Haaker, David Haaker, Lisa Haaker and Suzanne Haaker (collectively, the "Haaker Claimants") pursuant to the Court's Civil Conference Minute Order dated May 24, 2012. The purpose of this submission is to provide argument and authority in opposition to Claimant Olga Dufour's ("Dufour") position on the Court's April 16, 2010 Memorandum & Order Approving Set 195: Six Awards, 18 Award Amendments, Nine Administrative Revisions of Awards and Award Amendments, and 13 Letters Closing Claims Certified by the Claims Resolution Tribunal Pursuant to Article 31(2) of the Rules Governing the Claims Resolution Process and Authorizing Payment from the Settlement Fund, Docket No. 96-cv-4849, filed with the Clerk of the Eastern District on July 7, 2010, Document No. 4502 (the "2010 Order", annexed to the Declaration of Damara L. Chambers dated July 2, 2012 (the "Chambers Decl.") as Ex. "1"), which approved the Claims Resolution Tribunal's ("CRT") Certified Amendment *in re Accounts of Anna Marcus and Susanne Marcus* in the amount of 172,931.38 Swiss Francs (the "Award Amendment", annexed to the Chambers Decl. as Ex. "2").

The Haaker Claimants agree with Claimant Dufour that the clear intent of the Award Amendment and 2010 Order approving the same is to apply the terms of the parties' September 23, 2005 "So Ordered" settlement (the "2005 Settlement", annexed to the Chambers Decl. as Exs. "3" & "4") regarding the Amy Furmansky ("Furmansky") portion of the CRT's Certified Award regarding the Accounts of Anna Marcus and Susanne Marcus, dated April 24, 2003, in the amount of 5,305,314.60 Swiss Francs (the "Award"), to the additional funds. To be sure, both the Award Amendment and 2010 Order correctly direct that the

1

Award Amendment be distributed "in the same proportion" as the 2005 Settlement. (See Chambers Decl.: Ex. "1", at 6; Ex. "2", at 4). This identical directive in both the Award Amendment and 2010 Order is not vague or ambiguous, but requires only a simple math calculation, which results in a proportion of 33.33% for the Haaker Claimants and 66.67% for Claimant Dufour for the Furmansky share of the Award Amendment.

The directives of both the CRT and this Court correctly imply that the 2005 Settlement was to be proportional in nature, and both common sense and the knowledge of the parties at the time the settlement was entered into bear this out. For one, no matter how many times Claimant Dufour's papers make reference to payment of a "one-time, fixed amount," nowhere in the 2005 Settlement are such words found. (See Chambers Decl., Ex. "3", generally). To the contrary, the fact that neither party saw the need to specify whether the settlement was to be proportional or fixed leads to the inescapable conclusion that neither the Haaker Claimants nor Claimant Dufour had any idea that the CRT (as opposed to the GSF or any other tribunal) would eventually supplement or amend the original Award. The fact that the 2005 Settlement indicates that the Haaker Claimants were to receive $405,000.00 and Claimant Dufour was to receive "the rest" (see Chambers Decl., Ex. "3", at 3:18 - 4:3) likewise does not favor Claimant Dufour, as reference to "the rest" simply begs the question of what "the rest" is. Under the terms of the 2005 Settlement, the only fair reading of that phrase that comports with the parties' knowledge at the time they entered into the settlement is that it refers to the balance of monies received by Claimant Dufour pursuant to the initial Award after subtracting out the $405,000.00 paid to the Haaker Claimants pursuant to the settlement, i.e., $809,957.53. That is, at the time that the parties entered into the 2005 Settlement, neither

2

party contemplated supplemental or amended sums being awarded by the CRT and, thus, any such sums cannot be included in "the rest." Accordingly, the Haaker Claimants are entitled to share in the Award Amendment in, as the Court and the CRT correctly determined, "the same proportion" as the 2005 Settlement. To the extent that the Court entertains Claimant Dufour's request to clarify the 2010 Order, such clarification should be limited to supplying those numerical proportions for the parties.

## STATEMENT OF FACTS

**I.     The Original CRT Award**

Pursuant to the original Award, Richard Marcus ("Marcus"), who acted as family representative of the Accounts of Anna Marcus and Susanne Marcus before the CRT, was paid a total of $2,699,905.65 in June 2003, of which $1,349,952.82 was to be paid to Ms. Furmansky. (See Chambers Decl.: Ex. "8", at ¶ 4; Ex. "12", at Ex. "E").[1] In January 2003, three (3) months prior to the issuance of the Award and five (5) months before it was paid, Ms. Furmansky died. Ms. Furmansky had two (2) children, Claimant Dufour and Ilsa Haaker ("Ilsa"). Ilsa, who predeceased her mother in 1995, was survived by her four (4) children, the Haaker Claimants herein. (See Chambers Decl., Ex. "8", at ¶ 5).

Despite Ms. Furmansky's death three (3) months before the Award was issued and five (5) months before its distribution, neither Mr. Marcus nor Claimant Dufour ever informed the CRT of her death. Upon receiving the Award, Mr. Marcus distributed the entire

---

[1]  Mr. Marcus took a ten percent (10%) fee for acting as family representative, thus reducing the amount payable for the Furmansky share of the Award to $1,214,957.53.

$1,349,952.82, less his ten percent (10%) fee for acting as family representative, to Claimant Dufour, and paid nothing to the Haaker Claimants. (See Chambers Decl., Ex. "8", at ¶ 6).

In February 2004, approximately eight (8) months after the distribution of the Award proceeds, the Haaker Claimants were contacted by Mr. Marcus, who informed them that he had made a mistake in distributing the Award, and that they were entitled to one-half of the monies paid to Claimant Dufour. Mr. Marcus attempted to explain his "mistake" by reasoning that he was not aware that Ilsa had surviving children and that, if he was, he would have distributed 50 percent of the monies to them. (See Chambers Decl., Ex. "8", at ¶ 7). Prior to being contacted by Mr. Marcus in February 2004, none of the Haaker Claimants had any knowledge that Ms. Furmansky had filed or caused to be filed any claims with the CRT. (See Chambers Decl., Ex. "8", at ¶ 8).

Subsequent to speaking with Mr. Marcus, on or about March 1, 2004, Lawrence Haaker ("Lawrence"), on behalf of the Haaker Claimants, wrote to Claimant Dufour and her attorney, Stuart Eizenstat, Esq. ("Eizenstat"), requesting remittance of the Haaker Claimants' share of the Award proceeds. (See Chambers Decl.: Ex. "8", at ¶ 9; Ex. "12", at Ex. "C"). On March 20, 2004, Mr. Marcus likewise confirmed his distribution error in an e-mail to Mr. Eizenstat. (See Chambers Decl.: Ex. "8", at ¶ 10; Ex. "12", at Ex. "D").

Also in March 2004, Lawrence contacted Special Master Michael Bradfield, Esq. ("Bradfield"), to advise him of the circumstances of Ms. Furmansky's death prior to issuance and payment of the Award, as well as the improper distribution of the Award solely to Claimant Dufour. (See Chambers Decl., Ex. "8", at ¶ 11). On or about March 19, 2004, Mr. Bradfield then sent a letter to Mr. Marcus which highlighted Mr. Marcus' failure to notify the

4

CRT of Ms. Furmansky's death, and indicated that the CRT would have properly divided Ms. Furmansky's portion of the Award had it been aware of her death.  Bradfield also requested that Marcus seek Claimant Dufour's cooperation in returning 50 percent of the monies paid to Marcus on her behalf before deducting Marcus' ten percent (10%) fee, to wit: $674,976.41. (See Chambers Decl.: Ex. "8", at ¶ 12; Ex. "12", at Ex. "E").  On March 20, 2004, Claimant Dufour sent an e-mail to David Haaker ("David"), also a Haaker Claimant, in which she claimed to have been advised in federal court that <u>heredity was the sole determinant</u> of entitlement to any award proceeds where the original claimant was deceased.  (See Chambers Decl.: Ex. "8", at ¶ 13; Ex. "12", at Ex. "F").

After receiving Special Master Bradfield's letter, Lawrence sent a second letter to Claimant Dufour and Mr. Eizenstat on March 23, 2004, again requesting remittance of the Haaker Claimants' share of the Award proceeds.  (See Chambers Decl.: Ex. "8", at ¶ 14; Ex. "12", at Ex. "G").  The Haaker Claimants repeatedly contacted Claimant Dufour, their aunt, in an attempt to have her return their dead mother's portion of the Award.  Several telephone calls and letters notwithstanding, Claimant Dufour refused to turn over the 50 percent of the monies she received.  (See Chambers Decl., Ex. "8", at ¶ 15).

On April 20, 2004, counsel for the Haaker Claimants wrote to the Court to advise of the circumstances of the dispute and to seek guidance in an attempt to resolve the matter informally.  (See Chambers Decl.: Ex. "8", at ¶ 17; Ex. "12", at Ex. "H").  Mr. Eizenstat, on April 26, 2004, submitted a responsive letter to the Court on behalf of Claimant Dufour in which he indicated that the matter was under review by Special Master Bradfield.  He further indicated that, as part of the review process, his office had provided a copy of Ms.

5

Furmansky's alleged Will to Mr. Bradfield, which Mr. Eizenstat admitted had never been probated and which Mr. Bradfield was never aware of. (See Chambers Decl.: Ex. "8", at ¶ 19; Ex. "12", at Ex. "J"). As of the date that the Haaker Claimants filed their Rule 60(b) motion, May 14, 2004, no such Will had ever been filed, probated or even submitted for probate in the appropriate Surrogate's Court, despite the fact that Ms. Furmansky died over sixteen (16) months earlier. (See Chambers Decl., Ex. "8", at ¶ 19 n.2).

As of April 26, 2004, the date of Mr. Eizenstat's letter to the Court, none of the Haaker Claimants had ever seen a copy of the alleged Will, and had only been told of its alleged existence in late-March 2004, more than nine (9) months after the Award was paid and more than fourteen (14) months after the death of Ms. Furmansky. (See Chambers Decl., Ex. "8", at ¶ 20). Moreover, neither Claimant Dufour nor Mr. Marcus ever made any reference to a Will in their conversations or their correspondence with the Haaker Claimants. (See Chambers Decl., Ex. "8", at ¶ 21).

On or about May 4, 2004, Special Master Bradfield issued a letter to all interested parties in a stated effort to update the facts before him as a result of correspondence received from Mr. Eizenstat in response to Mr. Bradfield's March 19, 2004 letter, which correspondence included a copy of Ms. Furmansky's Will. In an apparent attempt at informal resolution, the May 4, 2004 letter also requested comments from the interested parties prior to Bradfield's making a final determination on the matter. (See Chambers Decl.: Ex. "8", at ¶ 22; Ex. "12", at Ex. "K"). Of particular significance is the fact that, despite Bradfield's indication that when a claimant or represented party dies _after_ an award is approved, the award amount is distributed in accordance with that person's Will, his letter failed to indicate

6

what happens when, as in the case of Ms. Furmansky, a claimant dies several months <u>before</u> an award is even issued, especially where, as here, the CRT had not been made aware of the Will. (See Chambers Decl., Ex. "12", at Ex. "K").

Due to the one-year limitations period on a motion to obtain relief under Rule 60(b)(1) and 60(b)(3) on the basis of mistake, inadvertence, fraud, misrepresentation and/or other misconduct of an adverse party, however, the Haaker Claimants had no choice but to file their Rule 60(b) motion, as there was no guarantee that Special Master Bradfield would have finally resolved the matter prior to the May 17, 2004 deadline. (See Chambers Decl., Ex. "8", at ¶¶ 23-24). The basis for the motion pursuant to Rule 60(b)(1) was that both the original Award and the Order approving the same were based on a mistake occasioned solely by the concealment of Ms. Furmansky's death by Claimant Dufour and Mr. Marcus. With respect to their motion pursuant to Rule 60(b)(3), the Haaker Claimants alleged fraud, misrepresentation or other misconduct on the part of Claimant Dufour and Mr. Marcus based on the concealment of Ms. Furmansky's death and by also submitting a family tree, as part of the claims process, which failed to show Ms. Furmansky as deceased and failed to include the Haaker Claimants as the surviving children of their mother Ilsa.

## II.    The 2005 Settlement

After fully briefing the Haaker Claimants' Rule 60(b) motion, the parties appeared for oral argument before the Court on September 23, 2005, at which time a settlement conference was held and the parties settled their dispute. Pursuant to the 2005 Settlement, the Haaker Claimants were to receive $405,000.00 and Claimant Dufour was to receive "the rest[.]" (See Chambers Decl., Ex. "3", at 3:18 - 4:3). With respect to the $405,000.00 payment, nowhere

7

in the 2005 Settlement does it say that such payment is a "one-time, fixed amount," notwithstanding Claimant Dufour's contention (see Chambers Decl., Ex. "3", generally) and, in any event, the Haaker Claimants never understood that the payment would apply to any supplemental or additional monies that might be awarded by the CRT (see Affidavit of Lawrence Haaker, sworn to August 28, 2012 (the "Haaker Aff't"), at ¶ 4). In fact, at the time that the parties entered into the 2005 Settlement, the Haaker Claimants (and surely Claimant Dufour as well) did not contemplate supplemental or amended sums being awarded by the CRT and, thus, any such sums should not be included in "the rest." (See Haaker Aff't, at ¶ 5).

The 2005 Settlement does not say what "the rest" is, but the clear implication, and the common-sense understanding and assumption of the Haaker Claimants, is that "the rest" referred to the balance of monies paid to Claimant Dufour pursuant to the initial Award after subtracting out the $405,000.00 paid to the Haaker Claimants pursuant to the settlement, i.e., $809,957.53. (See Haaker Aff't, at ¶ 6). Put simply, the Haaker Claimants would never have settled with Claimant Dufour for only $405,000.00 if they knew or had reason to believe that the CRT would make any supplemental or additional award payments. (See Haaker Aff't, at ¶ 7).

With respect to the probate of Ms. Furmansky's Will, the Haaker Claimants never conceded its validity, but only agreed to withdraw their objections to probate as a condition of the 2005 Settlement. (See Haaker Aff't, at ¶ 8). In this regard, the Haaker Claimants' agreement to withdraw their Will contest was no more an admission of the Will's validity than Claimant Dufour's agreement to pay them $405,000.00 was an admission that she had

8

committed fraud in obtaining the full Furmansky portion of the Award. (See Haaker Aff't, at ¶ 9).

## III.   The Award Amendment and 2010 Order

As it pertains to the Haaker Claimants and Claimant Dufour herein, the 2010 Order states that "[a]s an <u>adjustment</u> to the original [A]ward amount, the amount of the Award Amendment *In re Marcus* in this set is to be distributed among the entitled parties <u>in the same proportion</u> as detailed in the agreement among the parties and approved by this Court in my Order of 23 September 2005." (See Chambers Decl., Ex. "1", at 6 (emphasis added)). The Award Amendment itself uses substantially identical language, indicating that "[a]s an <u>adjustment</u> to the original [A]ward amount, the amount of this Certified Amendment is to be distributed among the entitled parties <u>in the same proportion</u> as detailed in the agreement among the parties and approved by the Court in its Order of 23 September 2005." (See Chambers Decl., Ex. "2", at 4 (emphasis added)). Irrespective of any formal determination by the Court or the CRT, the reference to "entitled parties" in the Award Amendment and 2010 Order must be to the Haaker Claimants and Claimant Dufour, as they are the only parties to the 2005 Settlement.

## IV.   Correspondence Regarding The Award Amendment

Beginning in or about May 2010 and continuing through February 2011, Claimant Dufour and her counsel apparently corresponded with the CRT regarding the CRT's plans to make another distribution of funds. (See Affidavit of Claimant Dufour, sworn to June 29, 2012 (the "Dufour Aff't"), at ¶ 5; Chambers Decl., Exs. "13", "14", "15" & "16"). At the time that this

9

correspondence initiated, Claimant Dufour avers that she was not aware of the Court's 2010 Order. (See Dufour Aff't, at ¶ 5).

As part of their correspondence with the CRT, counsel for Claimant Dufour twice submitted a copy of Ms. Furmansky's Will and the Decree Granting Probate. (See Chambers Decl., Exs. "13"& "14"). Obviously unconvinced that additional funds should be paid solely to Claimant Dufour, the CRT forwarded the documents received to this Court, which directed that the Haaker Claimants be notified of Claimant Dufour's position with respect to the proposed additional funds. (See Claimant Dufour's Memorandum of Law dated July 2, 2012 (the "Dufour Mem."), at 8-9; Chambers Decl., Ex. "17"). Upon receipt of the CRT's letter sent at the Court's direction, the Haaker Claimants, through counsel, submitted a responsive letter to the CRT, dated March 18, 2011, stating their position. (See Chambers Decl., Ex. 18). On July 12, 2011, counsel for the Haaker Claimants and Claimant Dufour appeared before Judge Orenstein to discuss distribution of the Furmansky portion of the Award Amendment and 2010 Order. (See Chambers Decl., at ¶ 21).

## V.      The GSF Award To Claimant Dufour

The GSF Award to Claimant Dufour is wholly irrelevant to the matter at bar, which relates only to the CRT's Award Amendment and this Court's corresponding 2010 Order. The court stated as much in Marcus v. Dufour, 796 F. Supp. 2d 386 (E.D.N.Y. 2011), an interpleader action filed by Mr. Marcus against Claimant Dufour and the Haaker Claimants over GSF funds awarded to Claimant Dufour which the Haaker Claimants intended to contest. Simply put, the Court in Marcus stated that the facts of this case (i.e., the CRT case), are different than the facts of the GSF case. 796 F. Supp. 2d at 394. Moreover, it is undisputed

10

that, unlike the CRT in the instant matter, the GSF was made aware of Ms. Furmansky's death

and was provided with a copy of her Will prior to issuing the award.  796 F. Supp. 2d at 393.

## ARGUMENT

**I.     CLAIMANT DUFOUR'S ARGUMENT THAT THE 2010 ORDER'S REFERENCE
        TO PROPORTIONAL PAYMENT CONSTITUTES A MISTAKE SHOULD BE
        DISMISSED AS TIME-BARRED PURSUANT TO FRCP RULE 60(b)(1).**

As an initial matter, Claimant Dufour argues that the Award Amendment and 2010

Order directing distribution of the Award Amendment in the same proportion as the 2005

Settlement constitutes a mistake.  (See Dufour Mem., at 2, 12).  It is respectfully submitted that

Claimant Dufour's time to contest this alleged "mistake" has expired and, as such, she is not

entitled to any relief.

To be sure, pursuant to FRCP Rule 60(b)(1), the Court, on motion, may relieve a party

from a final order on the grounds of mistake or inadvertence.  See Fed. R. Civ. P. 60(b)(1).  A

Rule 60(b)(1) motion based on mistake, however, must be made within one year after entry

of the order.  See Fed. R. Civ. P. 60(c)(1).  The one-year deadline is absolute, and any motion

made beyond the deadline is untimely and must be denied.  See, e.g., McKeown v. N.Y., 444

Fed. Appx. 508, 2012 WL 5835, at *1 (2d Cir. Jan. 3, 2012); Warren v. Garvin, 219 F.3d 111,

114 (2d Cir. 2000); see also Wilson v. City of N.Y., 2009 WL 3614612, at *2 (S.D.N.Y. Nov.

2, 2009) (applying the same one-year deadline as absolute and denying an untimely motion

pursuant to FRCP 60(b)(3) based on fraud).

In the case at bar, the 2010 Order constitutes a final order which approved the Award

Amendment, and was entered in the Eastern District Clerk's Office on July 7, 2010.  (See

Chambers Decl., Ex. "1", at 1).  As such, any motion for relief from that Order based on

mistake was required to be made no later than July 7, 2011.  No such motion was ever made by Claimant Dufour, let alone within the one-year limitations period.  Thus, the limitations period constitutes an absolute bar to Claimant Dufour's attempt to obtain relief from the 2010 Order, which should be enforced according to its clear and unambiguous terms.

## II.   PURSUANT TO THE PLAIN LANGUAGE OF THE AWARD AMENDMENT AND 2010 ORDER, THE AWARD AMENDMENT SHOULD BE DISTRIBUTED IN THE SAME PROPORTION AS THE 2005 SETTLEMENT.

### A.   The Award Amendment And 2010 Order Are Clear And Unambiguous, And Should Be Enforced According To Their Terms.

The Award Amendment and 2010 Order specifically state that the terms of the 2005 Settlement should apply to the Award Amendment.  To be sure, both the Award Amendment and 2010 Order correctly direct that the Award Amendment be distributed "in the same proportion" as the 2005 Settlement.  (See Chambers Decl.: Ex. "1", at 6; Ex. "2", at 4).  This identical directive in both the Award Amendment and 2010 Order is not vague or ambiguous, but requires only a simple math calculation, using the amount that the Haaker Claimants and Claimant Dufour each received in the 2005 Settlement as the numerator (i.e., $405,000.00 for the Haaker Claimants and $809,957.53 for Claimant Dufour) and the total amount that Claimant Dufour received before settling with the Haaker Claimants as the denominator (i.e., $1,214,957.53).  This simple calculation results in a proportion of 33.33% for the Haaker Claimants and 66.67% for Claimant Dufour for the Furmansky share of the Award Amendment.

**B.    The Only Fair Reading Of The 2005 Settlement Is That It Was Intended To Be Proportional In Nature.**

As the Court is aware, it is vested with broad authority to clarify the terms or an open court settlement and to impose clarifying terms. Medinol Ltd. v. Guidant Corp., 500 F. Supp. 2d 345, 349-50 (S.D.N.Y. 2007). In fact, where the lack of detail in a settlement creates uncertainty as to its meaning, the Court's proper role is to craft terms that resolve that uncertainty. Id. at 350. As applied to the matter at bar, to the extent that the Court entertains Claimant Dufour's request to clarify the 2010 Order, such clarification should be limited to supplying the numerical proportions for the parties' respective shares that apply to the Award Amendment, as well as any further amendments or supplements of the original Award by the CRT.

To be sure, the directives of both the CRT and this Court correctly imply that the 2005 Settlement was to be proportional in nature, and both common sense and the knowledge of the parties at the time the settlement was entered into bear this out. Pursuant to the 2005 Settlement, the Haaker Claimants were to receive $405,000.00 and Claimant Dufour was to receive "the rest[.]" (See Chambers Decl., Ex. "3", at 3:18 - 4:3). With respect to the $405,000.00 payment, nowhere in the 2005 Settlement does it say that such payment is a "one-time, fixed amount," no matter how many times Claimant Dufour's papers make reference to such language. (See Chambers Decl., Ex. "3", generally).

Claimant Dufour argues that in accepting the $405,000.00, "the [Haaker Claimants] waived all claims to any future awards, such as the Award Amendment at issue here." (See Dufour Mem., at 13). The flaw that pervades Claimant Dufour's argument, however, is that

13

she treats the Award Amendment and resulting 2010 Order, which both clearly make reference to an "amendment" of the original Award, as a new award.[2]   The Court need only look to the Award Amendment and 2010 Order, both in title and in substance, to conclude that it is not a "new" award, but simply a revision of the initial Award.  (See Chambers Decl., Exs. "1" & "2", generally).  To be sure, both documents refer to the Award Amendment as "an adjustment to the original [A]ward amount[.]" (See Chambers Decl.: Ex. "1", at 6; Ex. "2", at 4 (emphasis added)).  As such, any claim that these "adjustments" represent a "new" award should be rejected out of hand.

In any event, the Haaker Claimants never understood that the payment would apply to any supplemental or additional monies that might be awarded by the CRT.  (See Haaker Aff't, at ¶ 4).  In fact, at the time that the parties entered into the 2005 Settlement, the Haaker Claimants (and surely Claimant Dufour as well) did not contemplate supplemental or amended sums being awarded by the CRT and, thus, any such sums should not be included in "the rest."  (See Haaker Aff't, at ¶ 5).

With respect to what constitutes "the rest," the 2005 Settlement does not say (see Chambers Decl., Ex. "3", generally), and reference to "the rest" (see Chambers Decl., Ex. "3", at 4:2-3) simply begs the question of what "the rest" is.  The clear implication, however, and the common-sense understanding and assumption of the Haaker Claimants, is that "the rest" refers to the balance of monies received by Claimant Dufour pursuant to the initial Award after

---

[2]  Indeed, Black's Law Dictionary defines "amendment" as "[a] formal revision or addition proposed or made to a statute, constitution, pleading, order, or other instrument; specif., a change made by addition, deletion, or correction; esp., an alteration in wording."  Black's Law Dictionary (9th ed. 2009) (emphasis added).

subtracting out the $405,000.00 paid to the Haaker Claimants pursuant to the settlement, i.e., $809,957.53. (See Haaker Aff't, at ¶ 6). This is the only fair reading that comports with the parties' knowledge at the time they entered into the 2005 Settlement.[3]

The fact that neither party saw the need to specify whether the settlement was to be proportional or fixed leads to the inescapable conclusion that neither the Haaker Claimants nor Claimant Dufour had any idea that the CRT (as opposed to the GSF or any other tribunal) would eventually supplement or amend the original Award. The Haaker Claimants confirm this obvious fact (see Haaker Aff't, at ¶¶ 4-5), and the absence of any statement by Claimant Dufour as to her expectations regarding the possibility of future payments by the CRT compels the same conclusion (see Dufour Aff't, generally).[4]

Lest there be any doubt that the 2005 Settlement should be deemed proportional or that Claimant Dufour never contemplated future adjustments to the original Award by the CRT, the Court need only consider a hypothetical situation where the CRT determines that too much money was paid out and requests a refund. Under Claimant Dufour's "one-time, fixed payment" theory, she would theoretically absorb the entire refund if asked to return some of the funds to the CRT. It cannot seriously be argued, however, nor is it believable, that in actuality Claimant Dufour would absorb the entire refund amount without asking the Haaker Claimants to contribute, pro rata, in the same proportion as the 2005 Settlement.

---

[3] This is apparently the same conclusion reached by both the CRT and the Court, as the directive to distribute the Award Amendment "in the same proportion" as the 2005 Settlement necessarily implies knowledge of what constitutes "the rest."

[4] Although Claimant Dufour makes reference to "any future Holocaust reparations payments to which [her] mother would have been entitled" (see Dufour Aff't, at ¶ 3), the clear implication is that she was referring to payment from a tribunal other than the CRT.

15

Put simply, the Haaker Claimants would never have settled with Claimant Dufour for only $405,000.00 if they knew or had reason to believe that the CRT would make any supplemental or additional award payments. (See Haaker Aff't, at ¶ 7). Accordingly, the Haaker Claimants are entitled to share in the Award Amendment in, as the Court and the CRT correctly determined, "the same proportion" as in the 2005 Settlement.

## III.   CLAIMANT DUFOUR'S RELIANCE ON MS. FURMANSKY'S WILL IS MISPLACED, AS THE ORIGINAL AWARD WAS NOT BASED ON THE WILL AND THE HAAKER CLAIMANTS CONSENTED TO ITS PROBATE SOLELY AS A CONDITION OF THE 2005 SETTLEMENT.

The Haaker Claimants' Rule 60(b) motion was based on the concealment by Claimant Dufour and Mr. Marcus of Ms. Furmansky's death, which resulted in the CRT and the Court mistakenly issuing the original Award. The Haaker Claimants' Rule 60(b) motion was also based on the fact that Claimant Dufour and Mr. Marcus committed fraud by concealing Ms. Furmansky's death from the CRT and the Court, and by also submitting a false family tree, as part of the claims process, which failed to show Ms. Furmansky as deceased and which failed to include the Haaker Claimants as the surviving children of their mother Ilsa. (See Chambers Decl., Ex. "12", at Exs. "E", "H" & "M"). Had the CRT and the Court been aware of Ms. Furmansky's death, the Haaker Claimants argued, Ms. Furmansky's portion of the Award, as well as the corresponding Order, would have been certified to her proper distributees, one-half to Claimant Dufour and one-half to the Haaker Claimants.

By way of background, it must be noted that Claimant Dufour failed to submit a copy of the Will to the CRT until April 2004 at the earliest, which Will her attorney admitted had never been probated and the CRT was never even aware of. (See Chambers Decl.: Ex. "8",

16

at ¶ 19; Ex. "12", at Ex. "J"). As of the date that the Haaker Claimants filed their Rule 60(b) motion, the Will had never been filed, probated or even submitted for probate in the appropriate Surrogate's Court, despite the fact that Ms. Furmansky died over sixteen (16) months earlier. (See Chambers Decl., Ex. "8", at ¶ 19 n.2). As the Will surfaced more than nine (9) months after the original Award was paid, it is axiomatic that the CRT did not consider the Will in issuing the Award.

Neither Claimant Dufour nor Mr. Marcus ever made any reference to a Will in their conversations or their correspondence with the Haaker Claimants. In fact, in her e-mail to Lawrence's brother, Claimant Dufour failed to mention the Will and expressly stated her understanding that <u>heredity was the sole determinant</u> of entitlement to any award proceeds where the original claimant was deceased. (See Chambers Decl.: Ex. "8", at ¶ 21; Ex. "12", at Ex. "F"). Moreover, regarding the substantive aspects of the Award's distribution itself, Mr. Marcus, in his e-mail to Mr. Eizenstat, conceded that the Award should not have been paid through the Will, and gave several good reasons as to why. (See Chambers Decl., Ex. "12", at Ex. "D").

In sum, the Haaker Claimants argued that Ms. Furmansky's Will, which suddenly and conveniently surfaced more than a year after her death, and then only in response to the demands by the Haaker Claimants, could not be considered by the Court or the CRT in evaluating the merits of the Rule 60(b) motion. This was so notwithstanding Special Master Bradfield's indication that when a claimant dies <u>after</u> an award is approved, the award amount is distributed in accordance with that person's Will, as his letter failed to indicate what

happens when, as in the case of Ms. Furmansky, a claimant dies several months <u>before</u> an award is even issued.  (See Chambers Decl., Ex. "12", at Ex. "K").

Both the original Award itself and the Rules Governing the Claims Distribution Process (the "Rules") supported the Haaker Claimants' position as well.  First, in the "Division of the Award" section of the Award, it is clear that the Award was divided and intended to be disbursed entirely in accordance with Article 23(1) of the Rules, entitled "Criteria of Awards in Absence of a Will or Other Inheritance Documents[.]"  (See Chambers Decl., Ex. "12": Ex. "A", at 7; Ex. "L").  To be sure, not a single division of the Award in the Award document made reference to any division according to Article 23(2) of the Rules, which is the controlling subsection for when a will is submitted as part of the claims process.  Not only was there no will of either of the original Account Owners, Anna Marcus and Susanne Marcus, but it is undisputed that Ms. Furmansky's Will was never submitted as part of the claims process either.  Even giving the most favorable light possible to Claimant Dufour's position, Article 23(2)(c) of the Rules would control where, as here, a claimant fails to submit an <u>unbroken chain of wills tracing back to the Account Owner</u>.  In such event, the distribution of the Award would be pursuant to Article 23(1) of the Rules (<u>i.e.</u>, to lineal descendants by representation), consistent with principles of fairness and equity.  (See Chambers Decl., Ex. "12", at Ex. "L").[5]

It is against the foregoing set of facts that the parties arrived at the 2005 Settlement.  Thus, with respect to the probate of Ms. Furmansky's Will, the Haaker Claimants never conceded its validity, but only agreed to withdraw their objections to probate as a condition

---

[5]  This position is not at odds with Special Master Bradfield's May 4, 2004 letter, which only speaks to the procedure when a claimant dies <u>subsequent</u> to an award being issued.  (See Chambers Decl., Ex. "12", at Ex. "K").  In this case, Ms. Furmansky's death occurred three (3) months <u>before</u> the Award was even issued.

of the 2005 Settlement. (See Haaker Aff't, at ¶ 8). In this regard, the Haaker Claimants'

agreement to withdraw their Will contest was no more an admission of the Will's validity than

Claimant Dufour's agreement to pay them $405,000.00 was an admission that she had

committed fraud in obtaining the full Furmansky portion of the Award. (See Haaker Aff't, at

¶ 9). Ms. Furmansky's Will was never considered by the CRT or this Court in issuing the

original Award and resulting Order, and should not now be considered in determining

entitlement to any amendment of that Award.

## CONCLUSION

For the foregoing reasons, as well as those set forth in the Haaker Affidavit, the Haaker

Claimants respectfully request that the Furmansky share of the Award Amendment be

distributed to the parties in the same proportion as the 2005 Settlement, as already directed

by the CRT and this Court.

Dated:   Melville, New York
         August 28, 2012

                              MARKOWITZ & RABBACH LLP
                              Attorneys for Claimants
                              Lawrence Haaker, David Haaker,
                              Lisa Haaker and Suzanne Haaker


                              By: _____
                                  Heath Olnowich, Esq.
                                  290 Broadhollow Road, Suite 301
                                  Melville, New York 11747
                                  (631) 427-7888
                                  HBO@mrlawfirm.com

File: 1011-113.087

19